UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA         :
                                 :
            v.                   :        CR 04-06 S
                                 :
JAMES SILVA                      :

## REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant James Silva ("Defendant") is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, hearings were conducted on February 2 and 18, May 19, and June 2 and 8, 2010. At the February 18th hearing, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms of his supervised release. Based on this admission, I find that Defendant has violated supervised release. For the reasons stated herein, I recommend that Defendant be sentenced to a term of imprisonment of ten months to be followed by twenty-six months of supervised release.

## Background

On May 25, 2004, Defendant appeared before Senior U.S. District Judge Ronald R. Lagueux for sentencing after having pled guilty to one count of bank robbery, a Class C felony. Judge Lagueux imposed a term of seventy-eight months incarceration to be followed by three years of supervised release. As special conditions of that supervised release Defendant was required to: 1) participate in and satisfactorily complete a program approved

by the United States Probation Office for the treatment of
narcotic addiction or drug or alcohol dependency which included
testing for the detection of substance use or abuse; 2)
participate in and satisfactorily complete a program of mental
health treatment focused on Defendant's attention deficit
disorder and dyslexia, as approved by the probation officer; and
3) pay restitution in the amount of $5,389.00 and a special
assessment of $100.  Supervised release commenced on October 28,
2009, with an expiration date of October 27, 2012.

On February 1, 2010, U.S. Probation Officer Kathleen M.
Hopkins ("U.S.P.O. Hopkins") initiated a Petition for Warrant for
Offender under Supervision (the "Petition"), alleging that
Defendant had violated five conditions of his supervised release.
See Petition at 1-2.  In response to the Petition, U.S. District
Judge William E. Smith ordered the issuance of a warrant, see id.
at 3, and on February 2, 2010, Defendant appeared on the warrant
before this Magistrate Judge to answer to the Petition, see
Docket.

### The Violation

The Supervised Release Violation Report (the "Violation
Report") states that Defendant violated the following conditions
of supervision in the manner indicated:

**Standard Condition: Defendant shall refrain from any unlawful use
of a controlled substance.**

Defendant provided urine screens which tested positive for
illicit substances on the following dates: November 10, 2009 -
cocaine and opiates; November 30, 2009 - opiates; December 4,
2009 - opiates; December 18, 2009 - cocaine and opiates; January
6, 2010 - marijuana, cocaine, and opiates; and January 8, 2010 -
marijuana and cocaine.

As to this violation, on November 10, 2009, Defendant
provided a urine screen which tested positive for cocaine and

opiates. On November 20, 2009, he was questioned at the probation office regarding the positive screen. He vehemently denied any cocaine use, and he attributed the opiate use to prescription pain medication which had been prescribed for scabies. Defendant was reprimanded and informed that he must report to the probation office for increased urine screen surveillance on Mondays and Thursdays.

On December 18, 2009, Defendant was questioned regarding the urine screens on November 30 and December 4, 2009, which had tested positive for opiates. Defendant attributed the results to oxycodone use for pain. However, the Probation Office had been informed by Scientific Testing Laboratories on December 9, 2009, that oxycodone use would not provide a positive morphine result. U.S.P.O. Hopkins informed Defendant of this. Defendant then admitted that he had used heroin three weeks earlier. He was instructed that he must commence an intensive outpatient treatment program at Codac, Inc., in Cranston, Rhode Island. The urine screen taken on December 18, 2009, was confirmed on December 29, 2009, as being positive for opiates and cocaine.

On January 6, 2010, a urine screen was requested by U.S.P.O. Hopkins at the Crossroads facility. At the time of the urine screen, Defendant denied having used any illicit substances for the previous five days. However, in preparation for the unobserved screen, Defendant was asked by U.S.P.O. Hopkins to empty his pants pockets. He produced a hypodermic needle and an empty prescription bottle. The urine screen was confirmed on January 14, 2010, as positive for marijuana, cocaine, and morphine. Defendant was instructed to report for a urine screen on January 8, 2010, and on January 15, 2010, that screen was confirmed as  positive for marijuana and cocaine.

**Condition #2: Defendant shall report to the probation officer and shall submit a truthful and complete written report within the**

3

**first five days of each month.**

Defendant failed to submit monthly reports for November and December 2009 which were due December 5, 2009, and January 5, 2010, respectively.  On November 2, 2009, the conditions of supervision were reviewed with Defendant and executed by him.  At that time Defendant was provided monthly report forms.  However, he failed to submit any monthly reports.

**Condition #3: Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

Defendant failed to report to the probation office as instructed on December 7, 11, and 22, 2009, and January 25, 2010. As to this violation, on November 20, 2009, Defendant was informed that he must report to the probation office on Mondays and Thursdays for urine screens.  He failed to appear for a urine screen as instructed on December 7, 2009, and he was questioned regarding this missed urine screen on December 9, 2009. Defendant stated that his wallet had been stolen at Crossroads on December 6, 2009, and that he had to go to work to earn some money on December 7.  Defendant failed to report as instructed on December 11, 2009.  He stated that he was working.  On December 18th, Defendant was instructed to report to the office on December 22, 2009, but Defendant failed to report as instructed. On January 22, 2010, a message was left with Crystal Young of Crossroads for Defendant to report on January 25, 2010.  However, Defendant failed to report on that date.  On January 26, 2010, Defendant was questioned and reprimanded regarding his failure to report on January 25th.  He stated that he had reported at 4:10 p.m., but the court security officers had told him that the probation office was closed.

**Special Condition: Defendant shall participate as directed in a program of mental health treatment approved by the Probation**

**Office.**

Defendant failed to attend outpatient mental health counseling on December 1, 14, and 31, 2009, and January 13, 2010. He failed to attend psychiatric evaluations on December 10, 2009, and January 15, 2010.  As to this violation, Defendant was referred to the Kent Center for mental health counseling.  On December 1, 2009, he failed to attend his mental health counseling.  On December 10, 2009, Defendant failed to attend his psychiatric evaluation at the Kent Center.  The matter was addressed with Defendant on December 17th, and he advised that he missed his evaluation because he had to work.  Defendant failed to attend his counseling sessions on December 14 and 31, 2009. Defendant's failure to attend his mental health treatment was addressed telephonically by U.S.P.O. Hopkins on January 4, 2010, and he attributed this failure to his working for a construction company.  Defendant subsequently failed to report for a mental health counseling session on January 13, 2010, and a psychiatric evaluation at the Kent Center on January 15, 2010.

**Special Condition: Defendant shall participate in an outpatient program approved by the Probation Office for substance abuse, which program may include testing to determine whether Defendant has reverted to the use of drugs or alcohol.**

Defendant failed to attend outpatient substance abuse counseling on December 7, 2009, with Adcare Hospital in Warwick, Rhode Island.  Defendant failed to attend an intensive outpatient counseling program with Codac, Inc., on December 29 and 30, 2009. As to this violation, Defendant was referred to Adcare Hospital for outpatient substance abuse treatment.  He attended one appointment on November 30, 2009, and missed an appointment on December 7, 2009.  On December 18, 2009, Defendant was instructed by U.S.P.O. Hopkins that he must attend intensive outpatient treatment.  He was referred to Codac, Inc., for an initial intake

on December 29, 2009.  Defendant failed to attend his intake on
that date and called the program the same evening stating that he
was late due to the fact that he was working.  He rescheduled the
intake to December 30, 2009.  However, he failed to attend this
session as well.  Defendant attended the intake session on
January 8, 2010, but failed to attend the program on January
11th.  He later reported to U.S.P.O. Hopkins and the Crossroads
staff that he had been at the hospital and could not make the
6:00 p.m. appointment.  Crossroads staff refuted this information
because Defendant was observed there at approximately 5:00 p.m.
that evening.

**Travel**

On February 2, 2010, Judge Smith ordered the issuance of a
warrant for Defendant to appear to answer to the Petition.  <u>See</u>
Petition at 3.  The warrant was executed, and Defendant appeared
before this Magistrate Judge on that same date.  At that time
Defendant was advised of the Petition and of the grounds for the
alleged violation.  After being so advised, Defendant requested a
continuance to February 18, 2010, which the Court granted.

On February 18th, Defendant, both personally and through
counsel, waived a violation hearing and admitted to the
violations contained in the February 1, 2010, Violation Report.
This admission satisfied the Court that there was an adequate
basis for finding that Defendant had violated the conditions of
supervision.  The Government then recommended that sentencing be
continued ninety days to allow Defendant to enter inpatient drug
treatment.  The Government represented that if Defendant
successfully completed treatment the Government would not
recommend a prison sentence for the violation, but would
recommend that Defendant be continued on the original term of
supervised release with treatment.  Counsel for Defendant
concurred in the Government's recommendation.  The Court accepted

this joint recommendation and continued the matter to May 19, 2010, at which time the parties would make their sentencing recommendations.

On May 19, 2010, Defendant appeared for the sentencing recommendation hearing.  However, the Court decided to continue the hearing for ninety days.  It did so because although Defendant had successfully completed an inpatient program of drug treatment at the Spectrum House on May 14, 2010, almost immediately after leaving that facility he had failed to report to the Probation Office on May 17th.  This was in disregard of the instruction which had been given to him by a Spectrum House clinician.  The instruction had been given both orally and in writing, and Defendant had signed an acknowledgment that he had received the instruction.  The Court found Defendant's immediate relapse into non-compliant behavior troubling and concluded that Defendant should be required to demonstrate for ninety days that he could comply with all of the conditions of supervision.  The Court further instructed U.S.P.O. Hopkins to notify it if Defendant failed to do so.  In such circumstances, the Court indicated that it would advance the hearing.

On May 27, 2010, U.S.P.O. Hopkins requested that an arrest warrant be issued for Defendant based on the following information.  On May 14, 2010, Defendant had moved to Nickerson House, a sober residence at 133 Delaine Street in Providence.  On May 19th, the same date on which Defendant had appeared before the Court, he provided a urine screen which tested positive for cocaine.  On May 25, 2010, Defendant was questioned regarding any cocaine use, and he vehemently denied using any illicit substances.  The next day, May 26th, a roofing contractor, who employed Defendant for roofing jobs on a per diem basis, reported that he had filed larceny and breaking and entering charges

against Defendant.[1]  According to Mr. Bailey, Defendant had been
working for him on a roof at 1 Samoset Drive in Providence.
Defendant was subsequently seen leaving the residence with a
green duffle bag.  When the home owner returned, he reported that
the bag and various articles from the home were missing.  On May
27, 2010, the Probation Office conferred with Lisa Anderson,
House Manager for Nickerson House.  Ms. Anderson reported that
Defendant had tested positive for opiates and cocaine on May 25,
2010, and had been instructed to leave the residence on May 26,
2010.  Based on this information, the Court granted the request
for the bench warrant.

On June 2nd, Defendant appeared on the bench warrant.
Defense counsel Timothy Morgan ("Mr. Morgan") requested a brief
continuance, and the sentencing recommendation hearing was
rescheduled to June 8, 2010.

On June 8, 2010, the Court received sentencing
recommendations from both the Government and defense counsel.
Defendant was also given the opportunity to address the Court
directly regarding its sentencing recommendation.  After hearing
from Defendant, the Court stated that it would take the matter
under advisement and issue a report and recommendation.  This is
that Report and Recommendation.

## Law

**Statutory Provisions**

A defendant whose term of supervised released is revoked
pursuant to 18 U.S.C. § 3583(e)(3) may not be required to serve

---

[1] The information about the complaint filed by Mr. Bailey against
Defendant is included here only because it was one of the reasons the
Court ordered the issuance of the bench warrant on May 27, 2010.  As
there has been no determination that Defendant committed the acts
alleged by Mr. Bailey, they are not considered for purposes of making
the sentencing recommendation expressed in this Report and
Recommendation.

more than two years in prison if the offense that resulted in the term of supervised release was a class C felony.  In this case, Defendant was on supervision for a class C felony.  Therefore, he may not be required to serve more than two years imprisonment upon revocation.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment.  The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here three years), less any term of imprisonment imposed upon revocation of supervised release.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations.  Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense,[2] or (iii) involves possession of a

---

[2] The term "controlled substance offense" is defined in §4B1.2(b) of the U.S.S.G.

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. §4B1.2(b).

firearm or destructive device; or (B) any other offense
punishable by a term of imprisonment exceeding twenty years.
Conduct consisting of any other offense punishable by a term of
imprisonment exceeding one year constitutes a Grade B violation.
Conduct constituting an offense punishable by a term of
imprisonment of one year or less, or violation of any other
condition of supervision, is classified as a Grade C violation.
Section 7B1.1(b) provides that where there is more than one
violation, or the violation includes more than one offense, the
grade of violation is determined by the violation having the most
serious grade.  In this case, Defendant has committed a Grade C
violation.

Pursuant to §7B1.4(a) of the U.S.S.G., the criminal history
category is the category applicable at the time the defendant
originally was sentenced to a term of supervision.  In this
instance, Defendant had a criminal history category of VI at the
time of sentencing.  The Revocation Table contained in §7B1.4(a)
of the U.S.S.G. provides that for a Grade C violation with a
criminal history category of VI an imprisonment range of 8 to 14
months is warranted.[3]

**Discussion**

**Government's Recommendation**

Assistant U.S. Attorney Adi Goldstein ("AUSA Goldstein")
recommended a term of imprisonment of fourteen months to be
followed by twenty-two months of supervised release.  In making
this recommendation, she noted that Defendant had admitted to
committing several Class C violations, that the Government,
nevertheless, had been willing to recommend no prison time if

---

[3] The Court of Appeals for the First Circuit has held that
Chapter 7 policy statements (including §7B1.4) are advisory rather
than mandatory.  See United States v. Ramirez-Rivera, 241 F.3d 37, 40
(1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st
Cir. 1993).

10

Defendant successfully completed an inpatient drug treatment program, and that Defendant had immediately relapsed into substance abuse after leaving the treatment program. AUSA Goldstein also referenced the fact that a police report has been filed in connection with a breaking and entering in which Defendant is a suspect.[4]

**Defense Counsel's Recommendation**

Mr. Morgan suggested that the Court impose a sentence of nine months, but give Defendant credit for the three months which he spent at Spectrum House. Mr. Morgan noted that the facility was located in a remote location and that there was little to do there. His implication was that Defendant's stay at Spectrum House was not significantly different from being incarcerated.

In support of this recommendation, Mr. Morgan argued that Defendant has untreated mental health problems, that he needs medication for these issues, and that when Defendant is denied the ability to obtain his medication, he relapses back into drug use. Mr. Morgan opined that placing Defendant at the Nickerson House was unwise because it put Defendant into the Manton Avenue areas, which Mr. Morgan described as a hotbed of crime and drug use. Mr. Morgan additionally argued that there should be no additional term of supervised release, meaning that the present expiration of supervised release of October 27, 2012, should remain in place.[5]

---

[4] At the June 8, 2010, hearing, Mr. Morgan objected to AUSA Goldstein's reference to this police report. The Court stated that it would overrule the objection and allow AUSA Goldstein to continue, but that the Court's recommendation would be based only on the violation to which Defendant has admitted and not on any unproven violation.

[5] AUSA Goldstein strongly objected to the suggestion that the Court could adopt Mr. Morgan's recommendation, opining that the period of supervised release had already been established and that it could only be modified by the sentencing judge. She also noted that the Probation Department had arranged mental health treatment for

**Defendant's Statement**

Defendant was given the opportunity to address the Court and chose to do so.  He stated that he was a drug addict, that he had not committed any new crimes, that he needed medication for his mental health problems, and that sending him to prison for two years was excessive.

**Court's Recommendation**

As already noted, the Court bases its recommendation solely on the conduct to which Defendant has admitted and not on any unproven allegations.  Weighing against a sentence at the low of the Guideline Range is the fact that there are multiple grounds for the violation.  The Court is also unpersuaded by the defense argument that the Probation Department bears some responsibility for Defendant's relapse into drug activity because it placed Defendant (or allowed him to be placed) at the Nickerson House. Almost immediately after leaving Spectrum House, Defendant failed to comply with the parting instruction that he report to the Probation Office on May 17.  Had he done so, Defendant could have expressed the concern now voiced by his counsel, namely that the environment in and around Nickerson House was too dangerous and that an alternative placement needed to be found.  When Defendant belatedly did contact the Probation Office, he vehemently denied using drugs.  Thus, Defendant has little credibility with the Court, and it appears that he will say whatever he believes will enable him to escape the consequences of his actions.

Weighing against a sentence at the high end of the Guideline Range is the fact that Defendant waived a violation hearing and admitted to the violations.  While his subsequent relapse into drug activity somewhat diminishes his acceptance of responsibility for the violation, Defendant still stands in a

---

Defendant, but that he had failed to attend.

different situation that a defendant who disputed the grounds for violation, demanded a violation hearing, and after the hearing was found to be a violator.  Accordingly, the Court weighs this circumstance in Defendant's favor, although obviously to a lesser degree than the Court would have had Defendant not relapsed.  It is also true that Defendant has not been found to have engaged in any new criminal activity, a circumstance which clearly would weigh in favor of a greater sentence.

After considering the various factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be sentenced to a term of imprisonment of ten months with twenty-six months supervised release to follow.  Defendant's request that he be given credit towards his prison sentence for the time spent at Spectrum House is rejected as is his request that the Court leave the present expiration date of supervised release unchanged.  The Court does not believe that it has authority to grant either of these requests.  Even if it does, the Court would decline to so.  The Court believes a sentence of ten months imprisonment is appropriate, and it sees no reason why Defendant should not be required to demonstrate hat he can comply with the conditions of supervision for twenty-six months as opposed to the shorter period which he seeks.

I further recommend that as a special condition of supervised release Defendant shall: 1) participate in a program of mental health treatment approved by the Probation Office; 2) participate in and satisfactorily complete an inpatient or outpatient program of substance abuse treatment to include periodic testing (up to 72 drug tests per year), as approved by the Probation Office; 3) participate in and satisfactorily complete a residential substance abuse treatment program as approved by the Probation Office during the first three months of supervised release; 4) pay restitution in the amount of

13

$5,389.00; and 5) pay a special assessment in the amount of $100.00.

## Conclusion

For the reasons stated above, I recommend that Defendant be sentenced to a term of imprisonment of ten months to be followed by a term of supervised release of twenty-six months with the special conditions specified in the preceding paragraph.  Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
June 11, 2010

14