UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
    v. : CR 04-06 S
:
JAMES SILVA :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

    This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant James Silva ("Defendant") is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, hearings were conducted on January 10 and 25, 2012. At the January 25, 2012, hearing, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms of his supervised release. Based on this admission, I find that Defendant has violated supervised release. For the reasons stated herein, I recommend that Defendant be sentenced to a term of imprisonment of 14 months with no further period of supervised release.

**Background**

    On May 25, 2004, Defendant appeared before Senior U.S. District Judge Ronald R. Lagueux for sentencing after having pled

guilty to one count of bank robbery, a Class C felony. Judge Lagueux imposed a term of 78 months incarceration to be followed by 3 years of supervised release. As special conditions of that supervised release Defendant was required to: 1) participate in and satisfactorily complete a program approved by the United States Probation Office for the treatment of narcotic addiction or drug or alcohol dependency which included testing for the detection of substance use or abuse; and 2) participate in and satisfactorily complete a program of mental health treatment focused on Defendant's attention deficit disorder and dyslexia, as approved by the probation officer. Defendant was also ordered to pay restitution in the amount of $5,389.00 and a special assessment of $100.

## The Prior Violation

On November 15, 2010, Defendant appeared before U.S. District Judge William E. Smith for sentencing after having admitted to violating the following conditions of supervised release: 1) Defendant shall refrain from any unlawful use of a controlled substance; 2) Defendant shall report the to probation officer and shall submit a truthful and complete written report within the first 5 days of each month; 3) Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer; 4) Defendant shall participate in a program of mental health treatment as approved by the Probation

Office; and 5) Defendant shall participate in an outpatient program approved by the Probation Office for substance abuse which program may include testing to determine if he has reverted to the use of drugs or alcohol. Judge Smith imposed a sentence of 9 months incarceration to be followed by 26 months supervised release with the special conditions that Defendant participate in a residential treatment program for substance abuse during the first three months of supervised release, participate in and satisfactorily complete a program approved by the Probation Office for inpatient or outpatient treatment of narcotic addiction or drug or alcohol dependency which was to include testing (up to 72 tests per year) for the detection of substance use or abuse, and participate in and satisfactorily complete a program of mental health treatment as approved by the Probation Office. Restitution in the amount of $5,389.00 and a special assessment of $100.00 were also imposed. Supervised release commenced on February 11, 2011, with an expiration date of April 10, 2013.

**The Present Violation**

On or about December 12, 2011, U.S. Probation Officer Kathleen M. Hopkins ("U.S.P.O. Hopkins") initiated a Petition for Warrant for Offender under Supervision (the "Petition"). The Petition alleged that Defendant had violated 5 conditions of supervised release. See Petition at 2-3. In response to the Petition, Judge Smith ordered the issuance of a warrant on December 14, 2011. See

3

id. at 3.  The warrant was executed, and on January 10, 2012, Defendant appeared before this Magistrate Judge to answer to the Petition.  At that time, Defendant was advised that the Probation Office would be filing an amended petition to add an additional ground for the violation.  Defense counsel, Olin Thompson ("Mr. Thompson"), then requested a two week continuance so that the entire violation could be addressed at a single hearing.  The Court granted this request, and the matter was continued to January 25, 2012.  Defendant was ordered detained pending that hearing.

On or about January 13, 2012, U.S.P.O. Hopkins initiated an Amended Petition for Warrant for Offender Under Supervision (the "Amended Petition"), alleging that Defendant had violated the additional condition that he not commit another federal, state, or local crime.  See Amended Petition at 3.  In response to the Amended Petition, Judge Smith ordered the issuance of a warrant on January 17, 2012, see id.  Defendant appeared before this Magistrate Judge on January 25th to answer to the Amended Petition.  See Docket.  At that time, he waived a hearing and admitted to violation stated in the Amended Petition.

**Factual Basis for the Violation**

The Amended Supervised Release Violation Report (the "Amended Violation Report") dated January 13, 2012, states that Defendant violated the following conditions of supervision in the manner described:

**Standard Condition: Defendant shall refrain from any unlawful use of a controlled substance.**

Defendant provided positive urine screens on June 30, July 15, 20, and 26, August 10, 25, and 30, September 6, 19, and 22, and October 14, 2011. Defendant has an extensive history of substance use which commenced at age 16. Since his discharge from residential treatment on May 27, 2011, he has used illicit substances as evidenced by positive urine results on the following dates in 2011: cocaine on June 30; cocaine, opiates, oxycodone, and marijuana on July 15; cocaine and marijuana on July 20 and 26, August 10, 25, and 30, and September 6; marijuana on September 19 and 22; and cocaine and marijuana on October 14.

**Condition #2: Defendant shall report to the probation officer and shall submit truthful and complete written reports within the first 5 days of each month.**

Defendant failed to submit monthly reports for July, August, September, and October 2011 which were due respectively on August 5, September 5, October 5, and November 5, 2011. As to this violation, on March 3, 2011, Defendant executed the Conditions of Supervision. Condition #2 states that Defendant shall report to the probation officer and submit a truthful and complete written report within the first 5 days of each month. Defendant indicated that he understood the condition. Since June 23, 2011, Defendant has failed to submit any monthly reports.

**Condition #3: Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

On May 31, 2011, Defendant was placed in the Random Urinalysis Screening Program (the "Screening Program") and assigned the color red. He was provided written instruction of the same. Defendant failed to report as instructed for the Screening Program on August 9, October 17 and 27, and November 9 and 28, 2011. In an effort to address Defendant's continuing drug use, several office appointments were scheduled. However, Defendant failed to follow verbal instructions to report on July 12, August 15, and November 21, 2011.

**Special Condition: Defendant shall participate as directed in a program of mental health treatment approved by the Probation Office.**

As to this violation, Defendant was participating in mental health treatment at the Providence Center, but was discharged from that program on November 14, 2011, for noncompliance due to his failure to attend counseling on July 27, September 29, and November 14, 2011. He also failed to attend a psychiatric evaluation on October 28, 2011.

**Special Condition: Defendant shall participate in an inpatient/outpatient program approved by the Probation Office for substance abuse, which program may include testing to determine whether**

**Defendant has reverted to the use of drugs or alcohol.**

Subsequent to being instructed that he must enter a residential treatment program, Defendant declined to enter a residential placement at the Mathias House on September 22, 2011. As to this violation, Defendant continued to use opiates despite methadone treatment and counseling, and on August 17, 2011, he was instructed to enter a residential treatment program. Defendant's clinician at the Providence Center recommended the Mathias House program, a residential dual diagnosis component of the Providence Center, where he would be allowed to continue the methadone maintenance. On September 22, 2011, Defendant was offered a bed in the program and refused, citing a desire to attend a hearing with the Social Security Administration on September 28, 2011, as his reason for refusal.

Additionally, Defendant's participation in methadone maintenance was minimal. He failed to attend sessions on November 7, 10, 18, 21, and 28, 2011. Defendant provided positive urine screens for cocaine and/or opiates at CODAC Behavioral Health ("CODAC") on July 12 and 14, August 15 and 23, September 21 and 26, October 14, 18, and 26, and November 8 and 17, 2011. The remarks section of a CODAC progress report dated November 21, 2011, states: "Patient has continued using and is not keeping appointments at this time."

**Standard Condition: Defendant shall not commit another federal,**

**state, or local crime.**

On January 10, 2012, Defendant committed the offense of possession of a controlled substance and obstructing officer in execution of duty in Providence, Rhode Island, as evidenced by his arrest on that date. As to this violation, on January 10, 2012, a Rhode Island State Trooper was conducting a motor vehicle stop on Elmwood Avenue in Providence. The state trooper observed a green Cadillac passing with a very loud muffler. A motor vehicle stop was initiated by the trooper, and it was noted that the vehicle's brake light was not functioning. The operator, Jeffrey Gardiner ("Mr. Gardiner"), informed the trooper that he did not have any identification and that his licence was suspended. A pat down of Mr. Gardiner was negative for contraband. However, he continued to look extremely anxious, and the trooper continued his questioning as to where Mr. Gardiner was headed. Mr. Gardiner stated that he was going to work, but he could not name the address of his employment. He was taken into custody. The trooper then requested identification of the two passengers. The front seat passenger produced a Crossroads identification card with the name of Jackson Rivera ("Mr. Rivera"). The backseat passenger (Defendant) was questioned, and he could not provide any identification. He was asked to exit the vehicle where a pat down was conducted. The trooper found a capped hypodermic needle in the backseat passenger's pocket and asked him whether he was a diabetic, and he

8

said "no." The trooper then asked the him[1] why he carried the hypodermic needle, and he told the trooper: "You know why." The trooper then asked the backseat passenger for his name and he stated that it was James Mello. The trooper then asked if he knew any of the passengers in the vehicle, and he stated: "No, I just got picked up a few minutes ago."

The trooper then requested permission to search the vehicle which Mr. Gardiner granted. An additional hypodermic needle was found under the rear passenger's side floor mat. The trooper also found a Cheyenne cigarette box on the floor board behind the operator's seat which contained 2 clear plastic bags of an off-white rocklike substance which appeared to be crack cocaine. Mr. Rivera was allowed to leave. Due to their close proximity, the trooper then questioned both Mr. Gardiner and the individual who stated that his name was James Mello, and both declined knowledge of the crack cocaine. The trooper advised both men that if neither claimed ownership they would both be charged.

A check of the registry and State criminal files failed to reveal anyone by the name and date of birth provided by James Mello. While driving to the barracks, the trooper questioned the man about his identity. The man stated, "You are going to find out

---

[1] The Amended Violation Report states that this question was directed to the front seat passenger. However, it is clear from the context that the question was posed to Defendant and that he was the one questioned regarding his use of the needle.

9

anyway when you get back to the station. My name is James Silva, DOB: ... of ... Washington Street, Providence, RI, and I have a U.S. Marshal's warrant." Upon arrival at the barracks, Defendant informed the officer that he was sorry for lying about his name and that the crack cocaine belonged to him. He provided a written statement indicating that he had lied about his name and that the crack cocaine belonged to him.

### Travel

As previously stated, Defendant initially appeared before this Magistrate Judge on January 10, 2012, and was advised of the contents of the Petition. The hearing was continued to January 25th, at which time Defendant was advised of the contents of the Amended Petition and of his right to a violation hearing. Defendant, both personally and through counsel, then waived a violation hearing and admitted to the violations contained in the January 13, 2012, Amended Violation Report. This admission satisfied the Court that there was an adequate basis for finding that Defendant had violated the conditions of supervision. After listening to counsel for the Government and the defense regarding what sentence should be imposed for the violation, the Court stated that it would recommend that a sentence of 14 months incarceration be imposed with no further period of supervised release and would issue a report and recommendation so stating.

**Law**

**Statutory Provisions**

A defendant whose term of supervised released is revoked pursuant to 18 U.S.C. § 3583(e)(3) may not be required to serve more than five years in prison if the offense that resulted in the term of supervised release was a Class A felony, not more than three years in prison if the offense was a Class B felony, and not more than two years in prison if the offense was a Class C or D felony. In this case, Defendant was on supervision for a Class C felony. Therefore, he may not be required to serve more than two years imprisonment upon revocation. However, since Defendant has already served 9 months imprisonment as a result of one or more previous revocations, the statutory maximum term of imprisonment remaining is 15 months.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here 3 years), less any term of imprisonment imposed upon revocation of supervised

11

release.

**Sentencing Guidelines[2]**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense,[3] or (iii) involves possession of a firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation.

---

[2] The Sentencing Guidelines are advisory. See United States v. Paneto, 661 F.3d 709, 715 (1st Cir. 2011)("The federal sentencing guidelines are advisory, not mandatory.")(citing United States v. Booker, 543 U.S. 220, 245, 125 S.Ct. 738 (2005)).

[3] The term "controlled substance offense" is defined in §4B1.2(b) of the U.S.S.G.

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. §4B1.2(b).

Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade. In this case, Defendant has committed a Grade B violation based on the Amended Violation Report.

Section 7B1.3(a)(1) states that upon a finding of a Grade A or B violation, the Court shall revoke supervision. Section 7B1.3(a)(2) states that upon a finding of a Grade C violation, the Court may revoke, extend, or modify the conditions of supervision. As noted above, Defendant has committed a Grade B violation. Therefore, the Court may revoke supervision.

Section 7B1.3(d) provides that any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under §7B1.4 (Term of Imprisonment). In this case, there is outstanding restitution in the amount of $5,389.00 and a special assessment of $100.00.

Pursuant to §7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced. In this instance, Defendant had a criminal history category of VI at the time of sentencing. The Revocation Table contained in §7B1.4(a) of the U.S.S.G. provides

13

that for a Grade B violation with a criminal history category of VI an imprisonment range of 21 to 27 months is warranted.  However, the statutory maximum term of imprisonment is now restricted to 15 months since Defendant already received 9 months incarceration for a previous violation.

## Discussion

**Government's Recommendation**

Assistant U.S. Attorney Adi Goldstein ("AUSA Goldstein") recommended that a sentence of 15 months incarceration be imposed for the violation.  AUSA Goldstein stated that the Government recognized that Defendant had accepted responsibility for the violation and that in such circumstances the Government would usually recommend less than the maximum sentence for a violation.  However, in the instant case Defendant had repeatedly proved that he was not amenable to supervision.  AUSA Goldstein noted that this was his second violation of supervised release and that he had violated almost every condition repeatedly—notwithstanding the Probation Office's Herculean efforts to find facilities to help Defendant with his addiction.  She observed that Defendant believed that his health would probably benefit from a period of incarceration given the severity of his drug addiction.  AUSA Goldstein concluded by opining that there were no other tools in the tool box to assist Defendant except the maximum sentence of 15 months imprisonment for the violation.

**Defense Counsel's Recommendation**

Mr. Thompson stated that the violation became a Grade B violation because of the new criminal charge and that this circumstance had significantly raised the guideline sentence range from the previous range of 8-14 months. He stated that while normally it would make sense for new criminal charges to raise the guideline range, this was not the case here because it should come as no surprise that Defendant was in possession of drugs given all of his failed drug tests and his severe addiction. Mr. Thompson argued that all of the violations were connected to Defendant's drug problem. While Mr. Thompson acknowledged that Defendant had failed or missed many drug tests and that he had missed several meetings with the Probation Officer, he maintained that Defendant had not ignored or been disrespectful to the Probation Office. He contended that there was no reason to impose the maximum sentence as Defendant was not going to learn anything more or became more respectful to the Court or Probation Office by virtue of an additional four months in prison. Accordingly, Mr. Thompson recommended a sentence of 11 months imprisonment, noting that this was 2 more months than Defendant's sentence for his previous violation. It would serve as adequate deterrent because it was almost a full year in prison. Mr. Thompson noted that: when Defendant was on supervision he weighed 130 pounds and was living in a burned-out warehouse; when he is released from prison he will

have to live in a shelter because he will not have any money; and Defendant essentially will be in the same position as he was when he was arrested on the present warrant. Mr. Thompson concluded that there will be little return on the cost of incarcerating Defendant for the additional 4 months recommended by the Government.

**Defendant's Statement**

Defendant was given the opportunity to address the Court regarding what sentencing recommendation it should make. Defendant apologized to the Probation Office, saying that they had helped him. He also noted that he has been a drug addict his whole life and has been in and out of prison for years. He stated that he will have nowhere to go when he gets out of prison, but that he will write to the Salvation Army to find out if they can assist him.

**Court's Recommendation**

The circumstances of this case are such that the Court advised Defendant prior to his waiving the violation hearing and admitting to the violation that the Court might not follow its usual practice of recommending a sentence slightly less than it would have imposed had Defendant not accepted responsibility for the violation. Those circumstances are the following facts: 1) this is Defendant's second violation, 2) there are multiple grounds for the violation, 3) the Probation Office has made repeated and extensive efforts to

help Defendant with his drug addiction, 4) the most recent ground is new criminal conduct, 5) the new criminal conduct constitutes a grade B violation, and 6) the maximum available sentence is 15 months imprisonment even though the sentence guideline range is 21-27 months.

Nevertheless, after listening to defense counsel and Defendant, the Court is persuaded that Defendant should still receive the benefit of a small reduction in the sentence because of his acceptance of responsibility for the violation. His waiver of a violation hearing spared the Government and the Court of the burden of conducting a violation hearing. The Court also found Defendant to be sincere in his statements to the Court. While the Court does not agree with defense counsel that a sentence of 11 months would be adequate punishment for the violation, the difference between 15 months and 14 months is not so significant as to diminish the deterrent effect of that sentence.

Accordingly, I recommend that Defendant be sentenced to 14 months imprisonment. I do not recommend that there be any further period of supervised release because such supervision would not be a good utilization of the scarce resources of the Probation Office. In compliance with U.S.S.G. § 7B1.3(d), I also recommend that Defendant be ordered to pay outstanding restitution in the amount of $5,389.00 and the special assessment of $100.00.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be sentenced to a term of imprisonment of 14 months with no further period of supervised release. I also recommend that Defendant be ordered to pay outstanding restitution in the amount of $5,3879.00 and the special assessment of $100.00.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ *David L. Martin*
DAVID L. MARTIN
United States Magistrate Judge
January 30, 2012